CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 30 2009

JOHN F. CORCORAN, CLERK
BY:
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TRAVIS R. BLANKENSHIP, ) | |
| Plaintiff, ) | Civil Action No. 7:07cv503 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) By: | Hon. James C. Turk |
| Defendant. ) | Senior United States District Judge |

This case was referred to the Honorable Michael F. Urbanski, United States Magistrate Judge, to submit a report setting forth appropriate findings, conclusions, and a recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge filed his Report and Recommendation ("R&R") on January 12, 2009, recommending that this court enter an order affirming the Commissioner of Social Security's ("Commissioner") decision denying plaintiff Travis R. Blankenship's ("Blankenship") claim for supplemental security income ("SSI") benefits under the Social Security Act (the "Act"), and grant the Commissioner's motion for summary judgment.

Blankenship timely filed objections to the Report and Recommendation on January 23, 2009; therefore the court must undertake a de novo review of those findings of fact and recommendations for disposition to which Blankenship has objected. Wimmer v. Cook, 774 F.2d 68, 73 (4th Cir. 1985). After a thorough examination of Blankenship's objections, the applicable law, and the documented record, the court adopts the Magistrate Judge's R&R, grants the Commissioner's motion for summary judgment, and denies Blankenship's motion for summary judgment.

1

Blankenship filed an application for disability insurance benefits ("DIB") and SSI payments on April 5, 2005, initially claiming an onset date of September 27, 2000 due to chronic back pain, bilateral leg pain, numbness, neck pain, and depression.[1] (Administrative Record, hereinafter "R.," 17, 132, 544, 546.) Because of the res judicata effect of a prior unsuccessful application for benefits, Blankenship amended his alleged onset date to May 31, 2003 (R. 17-18, 546),[2] and the ALJ considered this a request to withdraw the DIB application and dismissed the DIB claim. (R. 18, 25.)

In reaching the conclusion that Blankenship was not disabled,[3] the ALJ proceeded through the five-step sequential evaluation process used by the Commissioner. See 20 C.F.R. § 416.920. This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) has the residual functional capacity ("RFC")[4] to return to his or her past relevant work; and (5) has the RFC necessary to perform other work.[5] See id.

The ALJ made the following findings: First, that Blankenship has not engaged in substantial gainful activity since his alleged onset date. (R. 25.) Second, that Blankenship suffers from degenerative disc disease and depression, which are considered severe impairments

---

[1] Blankenship was born in 1975, (R. 77, 161, 398), and at the time of the ALJ's decision was considered a "younger individual" under the Act. 20 C.F.R. § 416.963(c).

[2] At the administrative hearing, the ALJ stated that her last decision was rendered April 30, 2003. Thus, counsel for Blankenship amended the onset date to May 1, 2003. (R. 546.) However, in her April 27, 2006 decision, the ALJ noted her prior decision was handed down on May 30, 2003, and thus amended Blankenship's onset date to May 31, 2003. (R. 17-18.) The ALJ's opinion at issue addresses the issue of disability beginning May 31, 2003 through the present date. (R. 18.)

[3] "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[4] RFC is a measurement of the most a claimant can do despite his limitations, considering the claimant's age, education, work experience, and impairments. See 20 C.F.R. § 416.945(a).

[5] If the claimant is found to be "disabled" or "not disabled" at any point in the five-step process, the inquiry ends there. 20 C.F.R. § 416.920(a)(4).

pursuant to 20 C.F.R. § 416.920(b). (R. 25.) Third, that these medically determinable impairments do not meet or medically equal any listing-level impairment. (R. 25.) Fourth, that Blankenship is unable to return to any past relevant work. (R. 25.) Fifth, that Blankenship retains the residual functional capacity for "simple, routine, unskilled sedentary work but requires a sit/stand option incorporating brief stretch breaks in place each forty-five minutes or so," with no "climbing . . . [and] no more than occasional balancing, stooping, kneeling, crouching or crawling." (R. 25.)[6] After finding there are a significant number of jobs in the economy that Blankenship can perform,[7] the ALJ found that he is not disabled under the Act. (R. 25-26.) As part of her determination, the ALJ found that Blankenship's allegations regarding his limitations and pain were not entirely credible. (R. 22-23, 25.) The Appeals Council denied Blankenship's request for review (R. 6-8), making the ALJ's decision the final decision of the Commissioner.

In his R&R, the Magistrate Judge concluded that substantial evidence supported the ALJ's RFC determination, including the ALJ's decision to not accept the RFC finding set forth in the KEY Functional Capacity Assessment ("FCA") performed by occupational therapist Laura Fickel on June 22, 2004. (See R. 168-75.)[8] The Magistrate Judge found that the ALJ's rejection of the FCA's findings was proper because (1) "[t]he FCA was performed by an occupational therapist, which is not an acceptable medical source to provide evidence to establish an impairment, pursuant to 20 C.F.R. § 416.913(a)," and (2) "the medical evidence of record contradicts a finding that Blankenship is limited to working five hours per day." (R&R at 6, Dkt.

---

[6] In making her RFC determination, the ALJ considered that "[d]epressive symptomatology and exacerbations of pain result in a moderate reduction in concentration defined as limiting claimant to simple/non-complex tasks and a moderate limitation on his ability to interact directly with co-workers or the public." (R. 23.)

[7] Blankenship received his general equivalency diploma, (R. 110, 158, 568), and his past relevant work includes warehouse worker, landscape laborer, line worker, line runner, odd jobs, and order clerk. (R. 18, 105, 113-17.)

[8] The FCA indicates that Blankenship has a five hour workday tolerance, (R. 168.), and the vocational expert testified at the administrative hearing that no jobs would be available to Blankenship if he were limited to a five hour workday. (R. 579-81.)

3

No. 26.) In addition, the Magistrate Judge concluded that there was no reason to disturb the ALJ's assessment that that Blankenship's subjective pain complaints were not entirely credible, in light of the objective medical evidence. (Id. at 13-14.) For these reasons, the Magistrate Judge recommended that this court affirm the Commissioner's decision denying Blankenship's claim for SSI benefits, and grant the Commissioner's motion for summary judgment.

Blankenship generally objects that the R&R's "conclusion that substantial evidence exists to support the Commissioner's final decision is in error," and that the Magistrate Judge "erred in recommending the plaintiff's motion for summary judgment be denied." (Objects. to R&R at 1-3, Dkt. No. 27.) More specifically, Blankenship objects to the Magistrate Judge's conclusion that the ALJ properly evaluated (1) the FCA and (2) the credibility of Blankenship's subjective complaints of pain. (Id. at 1-2.) For these reasons, Blankenship requests that this court reject the Magistrate Judge's recommendations and instead enter summary judgment for Blankenship.

## II

Blankenship brings this action pursuant to 42 U.S.C. § 405(g) of the Act, which authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). Judicial review of the Commissioner's final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, a reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389,

4

401 (1971)). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but it is "more than a mere scintilla of evidence [and] may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If the Commissioner's decision is supported by substantial evidence it must be affirmed. Hays, 907 F.2d at 1456; 42 U.S.C. § 405(g).

### III

#### A.

A review of the medical evidence reveals that substantial evidence supports the ALJ's determination that Blankenship is not disabled, because Blankenship retains the RFC for "simple, routine, unskilled sedentary work" including "a sit/stand option incorporating brief stretch breaks" approximately every 45 minutes, and that "a significant number of jobs exist in the national and regional economies that he could perform." (R. 25-26.)

A Virginia Department of Rehabilitative Services independent medical exam performed by Dr. William Humphries on January 25, 2005 found that Blankenship could sit six hours in an eight-hour workday, stand and walk six hours in an eight-hour day, lift 25 pounds occasionally and 10 pounds frequently, and was limited to occasional stooping, crouching, occasional climbing, kneeling, and crawling. (R. 239, 241-43.) Likewise, following a review of the medical records, state agency physicians opined on February 3, 2005 and March 28, 2005 that Blankenship could frequently lift or carry 10 pounds, occasionally lift or carry 20 pounds, stand and/or walk six hours in an eight-hour day, sit for a total of six hours in an eight-hour day, and perform occasional stooping, crouching, climbing, kneeling, and crawling. (R. 271-78; 332-39.)

Records from Blankenship's treating physicians also overwhelmingly support the ALJ's RFC determination. On February 3, 2004, the Kuumba Community Health & Wellness Center

5

("Kuumba") noted that Blankenship had no limitations. (R. 264-65.) An MRI performed on March 3, 2005 revealed early/mild intervertebral disk degeneration and posterior anular bulging at the L5-S1 level, and a mild degree of facet hypertrophy at the L4-5 and L5-S1 levels. (R. 246.) That MRI found "no evidence of disk herniation, spinal stenosis or focal abnormality." (R. 246.)[9]

Neurosurgeon John Fraser stated on June 20, 2005 that "[t]he reportedly unimpressive studies, the exam suggestive of symptom magnification and his current SSI issues would all predict a low likelihood of his benefiting from spine surgery. . . ." (R. 361-62.) On September 25, 2005, Dr. Fraser noted that Blankenship's x-rays showed no instability, his bone scan was normal, and his MRI showed no nerve root compromise. (R. 395.) An MRI of the c-spine taken on September 28, 2006 was likewise normal and unremarkable. (R. 475.)

Blankenship was repeatedly told by medical doctors to seek employment. (R. 448, 451, 504, 506.) Dr. Trevar Chapmon stated on December 22, 2006, that Blankenship:

> is capable of going on hunting trips where he would carry and fire an [sic] rifle or possibly a bow, drag out a deer, maybe climb tree stands, so I expect he could find some capacity of work he could perform. If his objective is to get better, we should be able to help him, otherwise[,] I don't have much to offer.

(R. 448.) After Blankenship requested yet another MRI on March 22, 2007, Dr. Chapmon declined to order one, noting that he suspects Blankenship has not pursued any type of employment and stating, "I cannot help him if he is not going to try and help himself." (R. 506.) Dr. Chapmon further stated on March 28, 2007 that Blankenship "may have an injury, but certainly not one that would prevent him from pursuing something other than a lawsuit or disability." (R. 504.)

---

[9] Three weeks after this MRI, Blankenship called Kuumba and requested an x-ray of his entire back "to see how much arthritis has spread." (R. 244.) This x-ray request was declined as unnecessary. (R. 244.)

6

In addition, at the hearing before the ALJ, the vocational expert testified that a hypothetical individual with the RFC that the ALJ ultimately found that Blankenship possessed would find numerous jobs available to him in the national and Virginia economies. (R. 575-77.)

Thus, substantial evidence supports the ALJ's finding that Blankenship was not disabled, because he still retained the RFC to perform a significant number of jobs in the national and regional economies.

**B.**

More specifically, Blankenship also contends that the ALJ failed to properly evaluate the June 22, 2004 FCA, including the RFC finding contained therein that Blankenship was incapable of working more than five hours a day. (R. 168-75.) The court disagrees. The ALJ first noted that the FCA was performed by an occupational therapist, which is not an acceptable medical source to provide evidence establishing an impairment, though the FCA may otherwise be considered as evidence.[10] (R. 22. See also 20 C.F.R. § 416.913(a).) The ALJ next correctly concluded that the FCA was "inconsistent with the remainder of the medical evidence by treating and examining medical doctors, which are entitled to greater weight since they are acceptable medical sources whose conclusions are consistent with clinical findings, or the general lack thereof." (R. 22. See also supra, § III(A).)

Further, in his objections, Blankenship refers only to a single report by Dr. Louis Castern as medical evidence that corroborates the FCA's findings. (Objects. to R&R at 2.) However, the court finds that even this solitary piece of the medical record does not in fact corroborate the FCA. First, Dr. Castern's assessment was made on March 23, 2001 (Ex. 2 to Pls. Mot. for Summ. J., Dkt. No. 15), over two years prior to Blankenship's amended onset date of May 31,

---

[10] The FCA findings are based only on a single three-hour session with Blankenship, including a physical functioning questionnaire that Blankenship filled out himself, in addition to testing and observations. (R. 168-75.)

7

2003. Second, on its face, Dr. Castern's assessment was limited to the then-present (and non-applicable) 2001 time period. (Id. ("It does not appear at this time that [Blankenship] would be able to return to even sedentary work duties.") (emphasis added).)[11] Thus, in his objections to the R&R, Blankenship failed to refer to any medical source during the applicable time period that supports the RFC findings found in the FCA. For these reasons, the court finds that the ALJ properly evaluated the FCA, including the ALJ's ultimate decision to disregard its RFC findings.

C.

In his objections, Blankenship further argues that the ALJ improperly evaluated his complaints of pain and erred in concluding that these complaints were not credible. When faced with conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Credibility determinations about allegations of pain are in the province of the ALJ, and courts should not normally interfere with such determinations. See Hatcher v. Sec'y, Dep't of Health and Human Servs., 898 F.2d 21, 23 (4th Cir. 1989); Melvin v. Astrue, No. 606cv32, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007); SSR 95-5p. The ALJ is not required to accept a claimant's testimony that he is disabled by pain, as these statements "alone . . . are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 416.928(a). "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591 (citing Mickles v. Shalala, 29 F.3d 918, 922 (4th Cir. 1994) (Luttig, J., concurring in the judgment)). See also 20 C.F.R. § 416.929(b).

---

[11] In addition, as of March 9, 2001, Dr. Castern himself opined that Blankenship's pain complaints did not square with the objective medical evidence, and instead illustrated a need for a psychological evaluation for chronic pain syndrome. (Ex. 1 to Pls. Mot. for Summ. J.)

8

The record does abound with Blankenship's subjective complaints regarding the disabling nature of his pain. For example, at the hearing before the ALJ, Blankenship testified that he could sit for 15 to 20 minutes and then has to get up to move around for 15 to 20 minutes, and that he lies down during the day two or three times for an hour or two each time. (R. 570-71.) Blankenship was also questioned about his attempts to gain employment, to which he responded:

> A. If I could work, I wouldn't be here today.
> Q. Did you make any efforts to go back to work ---
> A. No –
> Q. –part-time, sir?
> A. – I can't do it.
> Q. Did you look for a job and –
> A. No ma'am, I didn't.
> Q. … And why do you think you could not work five hours a day as was recommended?
> A. My back's tore up. I have a lot of problems with it.

(R. 549-550.) In response to further questions about why he did not try to obtain employment for even the five hours per day as recommended in the FCA, Blankenship reiterated, "I know I can't do it." (R. 573.)

However, Blankenship also testified that on a daily basis, he drives his girlfriend to and from work and drives his girlfriend's daughter to and from school. (R. 563-64.) The record also reflects that Blankenship often takes care of the pets, picks up around the house, and helps his girlfriend's daughter with her homework. (R. 121-23, 142.) He is able to make sandwiches and frozen dinners for meals. (R. 123,142.) Blankenship indicates he can drive himself around, shop for groceries with his girlfriend, talk on the phone, and sometimes eat dinner at a restaurant with family or otherwise visit. (R. 124-25.) He can also dress himself, bathe, care for his hair, shave, and feed himself. (R. 141.) In August, 2006, Blankenship was able to travel to South Carolina, (R. 422-30), and in December, 2006, he went on a hunting trip. (R. 454-58, 449-53.)

9

As explained above, the medical evidence also does not support Blankenship's complaints of disabling pain. There is no objective evidence of any worsening of his back condition over time. X-rays, MRIs and bone scans reveal no significant abnormalities and, at most, show some minimal degenerative changes. (R. 179, 196, 206, 209, 246, 395, 475.) The record indicates that physicians declined to order further x-rays or MRIs at Blankenship's request, because they were unnecessary. (R. 244, 506.) The record also makes plain that Blankenship does not need surgical intervention for any impairment. (R. 362, 395.) Blankenship's physicians have also consistently encouraged him to find employment. (R. 448, 451, 504, 506.) Indeed, outside of the FCA assessment previously discussed, there are simply no objective medical finding of anything that could be causing the degree of pain or limitation Blankenship claims.

Further, various doctor's notations indicate that Blankenship's representation of his pain and symptoms do not comport with the objective medical evidence. In a January 18, 2006 pain psychology report, Dr. Jerome Nichols found that Blankenship responded in a manner that suggests the exaggeration of symptoms. (R. 386.) Dr. Nichols noted Blankenship "tends to be a person who converts stress into physical symptoms." (R. 386.) Dr. Fraser's June 20, 2005 exam of Blankenship was also "suggestive of symptom magnification." (R. 362.)

Accordingly, the court finds no reason to disturb the ALJ's credibility assessment. Though the record is filled with Blankenship's subjective complaints of pain, such complaints do not square with other factual evidence regarding Blankenship's limitations, nor with the objective medical record.

## V

For the reasons stated above, the court will **OVERRULE** Blankenship's objections, and **ADOPT** the Magistrate Judge's R&R. The Commissioner's motion for summary judgment will be **GRANTED**, and Blankenship's motion for summary judgment **DENIED**. An appropriate order shall issue this day.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to counsel of record for both parties.

**ENTER:** This 20th day of March, 2009

*/s/ James C. Turk*
Senior United States District Judge